Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to receive further evidence or rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence AFFIRMS in part and MODIFIES in part the Opinion and Award of the deputy commissioner as follows:
The Full Commission finds as facts and concludes as matters of law the following which were entered into by the parties at the hearing before the deputy commissioner as
STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between the plaintiff and defendant-employer.
3. Plaintiff is alleging an injury by accident that occurred on 26 July 1991 resulting in an injury to her back.
4. The employer has denied liability.
5. The Liberty Mutual Insurance Company is the compensation carrier on the risk.
6. Plaintiff last worked for defendant-employer on 10 October 1991.
7. The issues to be determined by the Commission are (1) whether plaintiff suffered an injury by accident or a specific traumatic incident as alleged, and (2) what benefits, if any, is plaintiff entitled to receive.
* * * * * * * * * * * * *
The Full Commission adopts in part and modifies in part the findings of fact by the deputy commissioner and finds as follows:
FINDINGS OF FACT
1. On 26 July 1991, plaintiff was employed with defendant-employer as a packer in the winding department. Her job required her to lift cones of yarn and place them on pallets. On 26 July 1991, plaintiff picked up four cones of yarn and felt a sharp pain in her back as she was placing them on a pallet. Plaintiff reported this incident to her supervisor.
2. Following this incident plaintiff continued to work for defendant-employer. On 9 August 1991, plaintiff was examined by Dr. Alan Forshey. At that time plaintiff was complaining of discomfort and pain in her lower back with occasional radiating pain down both legs. Dr. Forshey diagnosed plaintiff with a low back strain and prescribed anti-inflammatories and recommended light duty.
3. Plaintiff continued to work for defendant-employer. On 22 August 1991, plaintiff returned to Dr. Kenneth Yaussy. At that time, plaintiff was complaining of low back pain with radiating pain into the outside portion of her right thigh and the front of her right leg. Dr. Yaussy examined plaintiff and noted that her exam was "nonspecific." Plaintiff's complaints did not follow any particular nerve root. Dr. Yaussy recommended that plaintiff undergo a CT scan.
4. A CT scan was performed on plaintiff's lumbar spine on 23 August 1991. The CT scan revealed no herniated disc or spinal stenosis. On 23 August 1991 Dr. Yaussy released plaintiff to return to light duty work.
5. Plaintiff continued to receive treatment from Dr. Yaussy. Dr. Yaussy was of the opinion that employee-plaintiff had musculoskeletal pain.
6. Plaintiff returned to Dr. Yaussy on 3 September 1991. At that time, she continued to complain of pain radiating down her right leg into her ankle. Dr. Yaussy recommended EMG studies to determine whether there was any nerve root irritation. The EMG studies were normal.
7. Plaintiff was next examined by Dr. Stanley Peters, an orthopedic surgeon in Hickory. She first saw him on 19 September 1991. At that time she was complaining of pain in her lumbar spine going into her right leg. Dr. Peters examined plaintiff and noted that she had a normal exam. Plaintiff returned to Dr. Peters on 2 October 1991 with the same or similar complaints. Dr. Peters ordered a myelogram and CT scan. These tests were performed on 7 October 1991 and were reported as normal.
8. Dr. Peters released plaintiff to return to work on 9 October 1991 without restrictions. Plaintiff's last day of work for defendant-employer was 10 October 1991. Following her release from care by Dr. Peters, plaintiff returned to work for defendant-employer on 10 October 1991 but was subsequently terminated as of that date. Plaintiff was terminated because she remained out of work for more than three days without calling in. Plaintiff was under the impression that she did not have to call in for these days because she had been informed by Butch Hunter, her supervisor, that she could have these days off while she attempted to contact Dr. Peters in order to decide whether to take a medical leave or return to her former position.
9. Plaintiff did not receive any medical treatment between 9 October 1991 and 18 September 1992. Plaintiff was treated by Dr. Gerald Coniglio beginning on 18 September 1992. During that visit plaintiff gave Dr. Coniglio a history of having long-standing back trouble. Plaintiff also gave Dr. Coniglio a history of not working for the last week.
10. Dr. Coniglio diagnosed plaintiff with a herniated disc at L5-S1. He performed a diskectomy and fusion at L5-S1 on 1 October 1992. The surgery revealed a bulging disc at L5-S1.
11. Following the surgery, Dr. Coniglio provided follow-up care to plaintiff. Plaintiff began to complain of persistent pain in her left leg. Dr. Coniglio ordered repeat myelogram and CT scan. Both of these were normal. Plaintiff continued to complain of pain, and Dr. Coniglio ordered a second post-operative myelogram and CT scan. Both of these were reported as normal as well. Dr. Coniglio was of the opinion during deposition testimony that plaintiff would have been disabled for a period of two to three months following her surgery and could have returned to work by around 1 February 1993. The only restriction that he would have placed on her was to refrain from any heavy lifting. There is no evidence that Dr. Coniglio released plaintiff to return to work on 1 February 1993.
12. According to Dr. Coniglio, an injury can occur to a disc in varying degrees. Over the course of time the injury to the disc can increase in size causing an increase in pain due to inflammation. Also over the course of time facet joints can thicken and entrap the nerve between the joint and the disc itself. This can be a slow and relentless process. More often than not discs become injured and then bulge over time by a slow process.
13. According to Dr. Coniglio it is not unusual for a person to sustain an injury to a disc and have relatively normal test results a couple of months later. He therefore concluded that the injury of July 1991 could have caused plaintiff's symptoms and subsequent disc injury.
14. A discogram confirms the presence of the disc. An abnormal disc, in spite of the fact that it may look normal underneath the myelogram, can still be abnormal.
15. Based upon the opinion of Dr. Coniglio and the other evidence presented, plaintiff's disc problem was caused by the original injury by accident. However, after her release to return to work with no restrictions on 9 October 1991, plaintiff did not become disabled until 12 September 1992, one week prior to seeing Dr. Coniglio on 18 September 1992. As a result of her disability and resulting surgery, plaintiff remained temporarily totally disabled until 2 November 1993, when she reached maximum medical improvement and was rated by Dr. Coniglio with a five (5) percent permanent-partial impairment to the back.
16. There is insufficient evidence of record to show that plaintiff engaged in a job search after she was released from Dr. Coniglio's care or that she was incapable of earning wages in any employment after 2 November 1993.
17. Plaintiff's average weekly wage was $335.93, yielding a compensation rate of $223.96.
* * * * * * * * * * * * * *
The foregoing stipulations and findings of fact engender the following:
CONCLUSIONS OF LAW
1. On 26 July 1991 plaintiff suffered a compensable injury by accident arising out of and in the course of her employment when she injured her back while picking up cones of yarn. This injury by accident caused plaintiff's disc problem for which she underwent surgery on 1 October 1992.
2. Plaintiff is entitled to temporary total disability compensation benefits from 12 September 1992 through 2 November 1993 at the rate of $223.96 per week. G.S. § 97-29.
3. Plaintiff is entitled to $223.96 per week for 15 weeks for the five (5) percent permanent partial impairment to her back. G.S. § 97-31(23).
4. Defendants shall pay all medical expenses incurred by plaintiff as a result of this injury by accident. G.S. § 97-25.
* * * * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. Defendants shall pay temporary total disability compensation to plaintiff at the rate of $223.96 per week from 12 September 1992, through 2 November 1993. This compensation has accrued and shall be paid to plaintiff in a lump sum, uncommuted, subject to the attorney's fee hereinafter approved.
2. Defendants shall pay permanent partial disability compensation to plaintiff at the rate of $223.96 per week for 15 weeks for the five (5) percent permanent partial impairment she suffers to the back. This compensation has accrued and shall be paid to plaintiff in a lump sum, uncommuted, subject to the attorney's fee hereinafter approved.
3. Defendants shall pay all medical expenses incurred by plaintiff as a result of this injury by accident when bills for same have been submitted and approved through procedures adopted by the Industrial Commission.
4. An attorney's fee in the amount of twenty-five (25) percent of the award to plaintiff herein is hereby approved for plaintiff's counsel. Said amount shall be deducted from said award and paid directly to plaintiff's counsel.
5. Defandants shall pay the costs, including an expert witness fee in the amount of $250.00 to Dr. Francisco Naveria.
 S/ _____________________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ _____________________________ LAURA K. MAVRETIC COMMISSIONER
S/ _____________________________ COY M. VANCE